IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CAREY AND RYAN PRATHER, | CV 15–163–M–DLC |
| Plaintiffs, | |
| vs. | ORDER |
| BANK OF AMERICA, N.A., | |
| Defendant. | |

Before the Court is Defendant Bank of America, N.A. ("BANA")'s motion to dismiss. For the reasons given below, the Court grants the motion in part and denies it in part.

## BACKGROUND

"On a motion to dismiss, material allegations of the complaint are taken as admitted, and the complaint is to be liberally construed in favor of the plaintiff." *Kennedy v. H & M Landing, Inc.*, 529 F.2d 987, 989 (9th Cir. 1976).

In the spring of 2008, Plaintiffs Ryan and Carey Prather (the "Prathers") bought a home in Frenchtown, Montana, for the purchase price of $243,079.00. The home is secured by a deed of trust (the "Deed") and a promissory note (the "Note"). The Deed and the Note were executed by the Prathers to Countrywide

Bank, FSB.  Shortly after closing, Countrywide's rights in the Deed and the Note were assigned to BANA.

The Prathers' initial monthly payment was $1868.00.  Less than a year after closing, the Prathers encountered financial difficulties when their child was born prematurely and Carey Prather lost her job.  The Prathers contacted BANA in early 2009 for assistance with their mortgage payments.  BANA advised the Prathers to apply to the HOPE for Homeowners program as a preliminary step toward modification.  Although they were approved for a modification, BANA did not extend an offer.  BANA then refused the Prathers' further attempts to communicate about the modification until September of 2010, when BANA informed the Prathers that they were ineligible for a loan modification.

BANA also advised the Prathers to apply for a loan modification through the Home Affordable Modification Program ("HAMP").  They submitted four separate applications between the spring of 2010 and early 2011.  BANA denied each application, informing the Prathers that they had failed to return the requested documents, even though the Prathers had returned the materials BANA requested for each application.  Throughout the modification process, BANA employees gave the Prathers confusing and occasionally conflicting information about the status of their applications.

In July of 2011, the Prathers turned to the Neighborhood Assistance Corporation of America ("NACA") to assist them in securing a loan modification with BANA. Like the Prathers, NACA submitted multiple loan modification applications, but they were denied on the false grounds that the Prathers had failed to turn in all required documents.

At some point during the process, BANA advised the Prathers to stop making payments on the mortgage so that they would be better qualified for a HAMP modification. The Prathers followed this advice and ceased making payments. In May of 2012, at BANA's request, the Prathers attended a meeting with BANA regarding their finances. Later that month, BANA recorded a Notice of Trustees' sale scheduled for October 5, 2012, claiming an unpaid principal of $249,911.94. Seven days after the sale was recorded, BANA referred the loan to a foreclosure review committee. On June 6, 2012, the Prathers attended a meeting hosted by BANA. At the meeting, BANA again advised the Prathers to stop making payments so that they would better qualify for a modification. Again, the Prathers complied with BANA's directive.

BANA eventually extended a loan modification offer to the Prathers. In a letter dated July 20, 2012, BANA informed the Prathers that they were approved for a modification but that they would need to make several monthly trial

payments. The terms of the modification were set: the new principal balance would be $265,565.99, with a monthly payment of $1672.08. The modified principal balance included $33,863.44 in fees and costs and delinquent and accrued interest. On November 24, 2012, following a successful trial run, BANA sent a commitment to modify the Prathers' mortgage according to the same terms. Although they disliked the terms of the modification and thought that BANA was responsible for most of the additional costs, the Prathers accepted BANA's commitment on December 14, 2012, believing that they had no other option.

After the Prathers returned the signed commitment, BANA continued to inform them that their modification application was incomplete. Although the Prathers have made regular payments following the loan modification, they have received occasional letters in which BANA has represented that the modification was denied or that the Prathers needed to send more documents to complete their application. The Prathers have not alleged that they have been charged additional interest or that foreclosure proceedings were initiated after they signed the modification commitment.

Additionally, beginning in early 2013, BANA's agents began entering the Property to inspect and photograph their home. The Prathers felt uncomfortable with the entries and did not give consent. BANA's entries continued until the

Prathers filed the complaint initiating this matter in December 2015.

## LEGAL STANDARD

Rule 12(b)(6) motions test the legal sufficiency of a pleading. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the court can draw a "reasonable inference" from the facts alleged that the defendant is liable for the misconduct alleged. *Id.* On a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Kneivel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## DISCUSSION

BANA seeks dismissal of the suit, arguing: (1) that the Prathers' claim for negligence falls outside the applicable statute of limitations; (2) that the Prathers

failed to plead duty and damages within their negligence claim; (3) that the Prathers' claims for trespass and invasion of privacy are partially time-barred; (4) that the Prathers' claims for trespass and invasion of privacy are insufficiently pleaded; and (5) that the Prathers' final claim for punitive damages must be dismissed along with their negligence claim.

## I.    Count I—Negligence

BANA argues that the Prathers' claim for negligence should be dismissed for two reasons: (1) the claim is time-barred; and (2) the Prathers failed to plead two essential elements of their claim, duty and damages. Because the Court ultimately determines that the Prathers' claim is time-barred, it does not consider whether it is well-pled.

Under Montana law, negligence actions are subject to a three-year statute of limitations. Mont. Code Ann. § 27–2–204(1). Because the Prathers filed their complaint on December 14, 2015, their claim for negligence may survive only if it accrued on or before December 14, 2012.

Under Montana law, a negligence claim has four elements: (1) existence of a duty; (2) breach of the duty; (3) causation; and (4) damages. *White v. Murdock*, 877 P.2d 474, 476 (Mont. 1994). The claim accrues "when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim

or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action."  Mont. Code Ann. § 27–2–102(1)(a).

Statutes of limitations must be applied uniformly, regardless of the merits of a plaintiff's case.  "The statute of limitations does not discriminate between the just and unjust claim."  *Schaffer v. Champion Home Builders Co.*, 747 P.2d 872, 874 (Mont. 1987).  The policy underlying statutes of limitations is, "at its roots, one of basic fairness."  *Gomez. v. State*, 975 P.2d 1258, 1263 (Mont. 1999) (citation and internal quotation marks omitted).  The statutes exist to compel plaintiffs to bring claims in a reasonably timely manner, affording protection to defendants and promoting justice by ensuring that evidence is reliable.  *Johnston v. Centennial Log Homes & Furnishings, Inc.*, 305 P.3d 781, 794 (Mont. 2013).

The parties do not dispute that BANA owed a duty to avoid negligence in the modification process and that BANA assumed that duty in 2009 when the Prathers first applied for a modification.  Two elements of the negligence claim are important to the Court's analysis: breach and damages.

Assuming for the sake of this Order that BANA was negligent, the Court must determine when the negligent conduct occurred and its consequences were realized.  The Prathers make two arguments.  First, they claim that BANA breached its duty by offering the specific loan modification to which they agreed

in December 2012 and to which they remain bound. They argue that they realized the damages of this act only when they signed the modification, three years to the day before they filed their claim. Second, the Prathers allege that BANA breached its duty by engaging in a pattern of bait-and-switch tactics beginning in 2009, suggesting that they would qualify for a loan modification, inducing them to stop making payments on their loan such that interest accrued, denying or ignoring their applications, and repeating the process ad nauseum. They argue that because this pattern continued until they filed their claim, the continuing tort doctrine applies, and their claim did not accrue until they initiated litigation.

Because the Prathers' two theories of accrual must be resolved through different legal analyses, the Court addresses each in turn.

### A.     The Modification

As to the Prathers' claim that BANA was negligent in offering the modification, BANA argues that it necessarily accrued before the Prathers signed and returned the commitment. The Prathers argue that their claim was incomplete until they agreed to the modification. They also claim that "BANA continued to engage in actions related to the loan modification review well into 2015, which by itself brings this claim within [the] 3-year statute of limitations for negligence." (Doc. 35 at 11.) They further argue that "[s]ince BANA itself has represented in

written communications that the loan modification is 'not yet complete' and since BANA itself failed to sign and return the document, it should be estopped from arguing now that the loan modification has been accepted by BANA and is complete." (Doc. 35 at 11.)

BANA has the better argument on this point. BANA's allegedly negligent conduct occurred before it offered the modification, when BANA counseled the Prathers to stop making payments and the Prathers incurred interest charges. However, even if BANA had been negligent in making the modification offer itself, its breach occurred when the offer was made. It cannot reasonably be argued that BANA breached its duty later by accepting the Prathers' agreement to the modification. The Prathers have not alleged damages arising from any letters BANA sent after the modification was complete. They have not claimed to have been charged additional interest on their loan following the modification. They have not alleged that their homeownership is threatened despite their compliance with the terms of the modification commitment. They have not claimed that BANA has failed to fulfill its obligations under the modification agreement. Nor have they advanced any legal argument in favor of their claim that BANA should be estopped from claiming that the statute of limitations has run because BANA sent letters stating that the modification is not yet complete. Thus, as to the

Prathers' claim for negligence arising from the loan modification itself, BANA's breach necessarily occurred—at the latest—on November 24, 2012, when BANA offered its commitment to modify the mortgage.[1]

Still unanswered is the question of when the damages resulting from the modification occurred. The Prathers argue that they could not have realized damages before they signed and returned the modification commitment on December 14, 2012. BANA asserts that the interest accrued in the years leading up to the modification and that the modification simply mitigated the Prathers' preexisting financial liabilities.

The Prathers cite to *Pederson v. Rocky Mountain Bank* for support. 272 P.3d 663 (Mont. 2012). The plaintiffs in *Pederson* received a six-month construction loan from the defendant bank in May 2007, at which time the bank also conditionally approved the plaintiffs for a 30-year mortgage at a 6% interest rate. However, by the time construction was completed, one of the plaintiffs' credit scores had significantly worsened, and the bank refused to close on the conditionally approved mortgage. On March 10, 2008, the parties entered into an

---

[1] In fact, the breach likely occurred before this date, when BANA allegedly counseled the Prathers to stop making payments on their loan, causing the Prathers to incur interest charges. However, for the purposes of its analysis, the Court assumes that the Prathers have a claim arising from the modification itself.

alternative agreement to repay the construction loan, and the plaintiffs agreed to three short-term loans at a 7% interest rate. *Id.* at 664. Following several unsuccessful attempts to refinance the loan, the plaintiffs brought suit on March 14, 2011. The Montana Supreme Court held that the claim was time-barred because it had accrued when the plaintiffs signed the agreement on March 10, 2008. *Id.* at 665.

The Prathers suggest that *Pederson* stands for the proposition that damages stemming from a loan agreement are never realized until the agreement is perfected by the signature of lendee. (Doc. 35 at 14). However, the Montana Supreme Court's holding in *Pederson* is much narrower. In *Pederson*, the plaintiffs' alleged injury arose from the high interest rate and short term of the loan. In contrast, the Prathers' alleged injury arose when interest accrued on their mortgage in the time period leading up to the modification. When the Prathers signed the mortgage, they merely agreed to pay money they already owed.

The Prathers' damages were realized before BANA extended the modification offer. The Prathers allege that the modification commitment includes charges for "delinquent and accrued interest from February 1, 2011 to November 1, 2012." (Doc. 28 at 12.) Additionally, in their response brief, the Prathers agree that, by signing the modification agreement, they "mitigated their damages as best

they could," accepting interest charges instead of facing foreclosure. (Doc. 35 at 21.) They do not allege that they have been held financially responsible for any interest accruing after the modification was complete. Thus, the Court cannot determine that the Prathers' incurred damages after November 1, 2012, the end of the period during which interest on their loan accrued. Where the modification agreement did not bind the Prathers to pay anything more than was already legally owing, the Court cannot determine that they suffered an injury upon their agreement to pay preexisting financial obligations.

## B.     BANA's Pattern of Negligence

The Prathers argue that, even if their damages were realized before they signed the modification agreement, their claim did not accrue until they filed their complaint. For purposes of this argument, the modification is simply one piece of BANA's continuing negligence. Because the Prathers do not dispute that BANA initiated the alleged pattern of negligence in 2009, when they first sought a modification, the theory can succeed only under the continuing tort doctrine.

Generally, a party's ignorance of a potential claim cannot stop the statute of limitations from running. *Christian v. Atl. Richfield Co.*, 358 P.3d 131, 152 (Mont. 2015) (citing Mont. Code Ann. § 27–2– 102(2)). However, the continuing tort doctrine provides an exception to the general rule. *Id.* at 140. "A continuing

tort is one that is not capable of being captured by a definition of time and place of injury because it is an active, progressive[,] and continuing occurrence. It is taking place at all times." *Id.* (citing *Floyd v. City of Butte*, 412 P.2d 823, 826 (Mont. 1966)) (internal quotation marks omitted). Although the doctrine most frequently applies to nuisance and trespass claims, it may be appropriate in other instances "if the injury is of a nature that may be considered continuing." *Id.* at 150.

Whether BANA's alleged negligence may appropriately be considered continuing depends upon whether the Prathers' injuries are temporary or permanent. *Id.* at 140. The continuing tort doctrine "applies to a temporary injury that gives rise to a new cause of action each time that it repeats." *Burley v. Burlington N. & Santa Fe Ry. Co.*, 273 P.3d 825, 828 (Mont. 2012). If the Prathers' injuries are permanent, the doctrine does not apply. *Christian*, 358 P.3d at 140. "A permanent [tort] is one where the situation has stabilized and the permanent damage is reasonably certain." *Id.* at 140 (citations and internal quotation marks omitted). On the other hand, a temporary tort is "terminable"; "its repetition or continuance gives rise to a new cause of action, and recovery may be had for damages accruing within the statutory period next preceding the commencement of the action." *Id.* at 141 (citations, internal quotation marks, and

ellipses omitted).  The "dispositive factor" in determining whether a tort is temporary or permanent is "reasonable abatability."  *Id.*  In other words, the defendant's unwillingness to correct a correctable problem may fairly be seen as the tort for statute of limitations purposes.

Here, the allegations against BANA are allegations of a permanent and not a temporary tort.  By the time BANA sent the modification offer to the Prathers in November 2012, the parties' course of dealing had "stabilized," and any damages they suffered were "reasonably certain."  *See Christian*, 358 P.3d at 140.  At that point, not only were the Prathers' financial liabilities clear and certain, which in and of itself would be sufficient for accrual, but they were subjectively aware of them.   The Court cannot reward the Prathers for sleeping on their rights.  *See Gomez*, 975 P.2d at 1263.  Looking to the allegations of the complaint, the very latest the Prathers' negligence claims could have accrued is November 24, 2012.

The Prathers claim that BANA's negligence is reasonably abatable because it can modify their loan at any time and forgive the interest charges.  This argument misstates Montana law.  If nothing more were required than a defendant's ability to give the plaintiff the relief she seeks, every tort would be a continuing tort, and the policy underlying statutes of limitations would be frustrated.

Because the Prathers' negligence claim is time-barred, the Court does not consider whether it was well-pled.

## II.    Count II—Trespass and Intrusion of Privacy

The parties agree that a two-year statute of limitations applies to bar any claims for trespass occurring before December 14, 2013.  BANA has not raised the issue of whether the Prathers' claim for "intrusion of privacy" is time-barred, focusing instead on whether the complaint is sufficient for the Court to allow the claim to go forward.  Thus, the Court does not consider whether the Prathers raised these claims within the applicable statute of limitations.  Rather, it focuses on whether the Prathers' claims are sufficiently pled.  The Court addresses each claim in turn.

### A.    Trespass

BANA argues that the Prathers failed to set forth sufficient allegations in their complaint to support their claim for trespass.  The parties do not dispute that the Deed allows BANA to inspect the Property if it is vacant or abandoned or if the loan is in default.  The Prathers suggest that the loan was not in default.[2]  They

_____

[2] Whether the loan was in default after the Prathers agreed to the modification is not entirely clear from the pleadings.  In their complaint, they state that they "continued to make regular payments since the time they entered into the loan modification."  (Doc. 28 at ¶ 59.) Their brief potentially presents conflicting accounts: "The deed of trust only permits BANA to inspect the property if they are in default . . . . [The Deed] does not state that Defendant may physically enter the Plaintiffs' property without their consent if they is [sic] in default . . . . The

also argue that even if the Deed authorized BANA's inspection of the Property, it did not authorize BANA's conduct because it did not include an allowance for unauthorized entry, harassment, or intimidation.

A claim for intentional trespass to real property under Montana law follows the elements outlined in the Restatement (Second) of Torts, § 158:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
> (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
> (b) remains on the land, or
> (c) fails to remove from the land a thing which he is under a duty to remove.

*Branstetter v. Beaumont Supper Club, Inc.*, 727 P.2d 933, 935 (Mont. 1986).

Restated, Montana "defines a trespass as an intrusion on a party's right to exclusive possession of her property." *Burley*, 273 P.3d at 828.

In their complaint, the Prathers clearly allege that BANA's agents intentionally entered the Property. The dispute is ultimately whether the Property was in the Prather's "exclusive possession" such that BANA's entries were unlawful.

To support their arguments, both parties cite to an order of this Court in a

---

Prathers were making payments under the loan modification agreement . . . ." (Doc. 35 at 25, 28–29.)

2012 case stemming from a foreclosure. *Paatalo v. J.P. Morgan Chase Bank, N.A.*, No. CV 10–119–BLG–CSO, 2012 WL 2505742 (D. Mont. 2012). In that case, the plaintiff mortgagor sued several defendants, including the mortgagee bank, for trespass to his property. *Id.* at * 10–11. The deed of trust allowed the bank to do "whatever is reasonable or appropriate to protect [its] interest in the [p]roperty" if the mortgagor failed to fulfill its legal obligations under the deed. *Id.* at *10. Because there was no dispute of fact that the loan was in default at the time of the bank's entry onto his property, the bank was entitled to summary judgment on the plaintiff's claim for trespass.

The Prathers have pled a claim for trespass. Unlike the plaintiff in *Paatalo*, the Prathers have not admitted that their account was in arrears after they signed the modification agreement. At this point, disputes remain as to whether the Prathers defaulted on their loan after the modification and whether the Deed authorized the particular entries made by BANA's agents. Confined to the complaint, the Court must assume that the loan was not in default and that BANA's actions were unauthorized by the Deed. Taking the material allegations of the complaint as true, the Court determines that the Prathers have raised a plausible claim for trespass.

## B. Intrusion of Privacy

-17-

BANA argues that Montana does not recognize a claim for "intrusion of privacy" and that this claim must be dismissed as a result. In the alternative, it asserts that if the claim is actually for invasion of privacy and therefore cognizable under Montana law, the claim, like the claim for trespass, should be dismissed because the Deed authorized BANA's entry on the Property. The Prathers agree that their claim is for invasion of privacy and argue that their claim should go to a jury to determine whether BANA's entries and the Prathers' resulting emotional distress were reasonable.

The Prathers' claim for invasion of privacy is not pled separately but instead conjoined with their claim for trespass in Count II of the complaint. They allege that various BANA agents entered the Property without their consent to take pictures of the house, at times when their children were in the yard or when they had just recently left the Property. They claim to have been harassed and to have experienced tension, anxiety, distress, and humiliation as a result.

Montana allows a plaintiff to recover for invasion of privacy from a defendant who "wrongful[ly] intru[des] into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *St. Bd. of Dentistry v. Kandarian*, 886 P.2d 954, 957 (Mont. 1994) (citations and internal quotation marks omitted). Montana's

recognition of the tort ultimately derives from an Ohio case with fairly extreme facts, *Housh v. Peth*, in which an overzealous creditor made frequent calls to the plaintiff, her employer, and her rooming house as part of a "pattern to harass and humiliate the plaintiff and cause her mental pain and anguish and cause her emotional disturbance for the purpose of coercing her to pay the debt." 133 N.E. 2d 340, 344 (Ohio 1956).

The Prathers' claim for invasion of privacy survives BANA's challenge. As explained above, a dispute remains as to whether BANA had a legal right to enter the Property. Moreover, even if BANA had a legal right to enter the Property, that right would not excuse BANA's actions if they rose to the level of harassment. The complaint includes only minimal allegations regarding the egregiousness of BANA's conduct and its emotional toll on the Prathers. However, those allegations are sufficient to survive BANA's challenge. It is not incredible that a creditor's entries upon an individual's property would be embarrassing to the ordinary person. At this stage of litigation, factual disputes remains as to whether those entries were wrongful, whether they were intrusions upon the Prathers' private activities, and whether they would disturb the emotions of a person of ordinary sensibilities. The Prathers have brought a plausible claim for invasion of privacy.

### III.    Count III—Punitive Damages

BANA argues that the Prathers' claim for punitive damages should be dismissed because it is based entirely on their negligence claim and not on their claims for trespass and invasion of privacy.  The Prathers do not dispute this characterization of their complaint, arguing that their claim for punitive damages should survive because their claim for negligence should survive.  Because the Prathers' negligence claim is time-barred, their claim for punitive damages fails as a matter of law.

"Actual damages are a predicate for punitive damages, and an individual with no real or actual damages has no right of action for punitive damages." *Stipe v. First Interstate Bank*, 188 P.3d 1063, 1068 (Mont. 2008).  The Prathers allege that BANA acted with actual malice in mishandling their applications for loan modification.  Thus, their claim for punitive damages is based in their claim for negligence.  Because the Prathers have no claim for negligence, they cannot be entitled to any actual damages stemming from the loan modification process.  The Prathers have no claim for punitive damages.  BANA is entitled to dismissal of Count III of the Prathers' complaint.

Accordingly, IT IS ORDERED that Defendants' motion to dismiss (Doc. 32) is GRANTED IN PART.  The motion is GRANTED with respect to Counts I

and III, which are hereby DISMISSED WITH PREJUDICE. Defendants' motion

is DENIED in all other respects.

Dated this 22nd day of August, 2016.

Dana L. Christensen, Chief District Judge
United States District Court